**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**BERNARD HAYES, #356161**                                                            **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO.  1:12cv215-JMR**

**RICKY WOODS; MATTHEW GARRIGA;
and KAREN JOHNSON**                                                            **DEFENDANTS**

## <u>MEMORANDUM OPINION</u>

This matter comes before this Court on the Defendants' Motion [40] for summary judgment for summary judgment filed in this case. Also pending before the Court are the defendants' motions to Dismiss for Lack of Prosecution [43], or in the alternative, to show cause and for Extension of Time to Complete Discovery [44] and Supplement Summary Judgment motion, if necessary. Bernard Hayes [Hayes] has a Motion for Subpoenas [45] pending. The Court, being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds as follows.

## <u>STATEMENT OF THE CASE</u>

Bernard Hayes [Hayes] filed this *pro se* Complaint on July 5, 2012, alleging violations of his civil rights, pursuant to 42 U.S.C. § 1983, while incarcerated in the Harrison County Adult Detention Center [HCADC] during May 2012. [1.] Specifically, Hayes, a pretrial detainee at the time of his alleged injury, advances claims of a violation of his rights under the Eighth Amendment's Cruel and Unusual Punishment Clause, and deliberate indifference to a serious medical need. [1, p. 6.]

Hayes contends that he was "isolated in the hole" until further notice, and that he received no response to his grievance filed in connection with this incident. [1, p. 3.] He contends that he has migraine headaches "from my head slapping the wall" and that he was left

for 2-3 days without medical attention. [1, p. 5.] He claims that while in handcuffs, Ricky Woods [Woods], Matthew Garriga [Garriga] and Zachary McCabe [McCabe] held him against the wall, while Woods allegedly had his hand around Hayes' neck, choking him. [1, p. 6.] When Hayes tried to move, "my head was pushed hard to the wall, not once but twice causing serious bodily injury." (*Id*.) He states that he was then placed in lock down until further notice. (*Id*.) He was examined by Rachael Betts, the LPN on duty, and allegedly was told he was fine. (*Id*.)

Hayes was housed in Block B, B-Section at the HCADC in cell 211, and on May 3, 2012, Woods was escorting an inmate[1] to his new cell assignment, which was cell 211. [40-3, p. 1.] Woods avers that Hayes came out of his cell when the door opened, and would not return to the cell, in spite of being asked to reenter his cell. [40-3, pp. 1-2.] Garriga and Woods both advised Hayes to pack his belongings to be move to the disciplinary section of Block B, but Hayes allegedly refused to obey these requests. [40-3, p. 1.] When Hayes became argumentative, Woods asked Hayes to turn around and "cuff up." [40-3, pp. 1-2.] Woods states that Hayes became aggressive when they entered the sally-port, balling up his fist and gritting his teeth. [40-3, p. 2.] Woods asked Hayes to turn around, and when he began to pull away Woods and McCabe forced Hayes against the wall to restrain him while Garriga handcuffed him. (*Id*.) Woods, Garriga and six other officers assisted in escorting Hayes to cell #130. (*Id*.) Woods included a copy of his narrative report of the incident. [40-3, p. 4.]

Woods asserts that his actions on that day were in compliance with the standards for inmate management and supervision, and included a copy of these standards. [40-3, pp. 3, 5-28.] The procedures also outline the acceptable use of force to be used, if necessary, in certain

---

[1]According to HCADC records, this would be either Richard Williams or Robert Worth. [40-11, p. 14.]

2

situations. (*Id.*)

Hayes testified that he was aware of the rules contained in the inmate handbook for the HCADC. [40-1, p. 22.] He stated that he was aware that according to the handbook, he could be disciplined for refusing to obey the verbal orders of a staff member. [40-1, p. 23.]

Hayes indicated that he had migraines when he was a child. [40-1, p. 25.] He stated that he had headaches for years, but were not as bad as the headache which ensued after the May 3, 2012, when Hayes allegedly hit his head on the wall while being handcuffed. [40-1, pp. 26-27.] Hayes contends that although he was in the medical unit under observation for 48 hours, he was not checked by a doctor during that time. [40-1, p. 29.] He agreed that a nurse "looked" at him on the date of the incident at issue in this lawsuit, but did not thoroughly exam him to observe the bruises on his body and arms. [40-1, p. 31.] Hayes testified at his deposition that some pictures were taken of his injuries, although later Hayes was told no pictures existed. [40-1, pp. 32-33.]

According to Hayes, he asked Woods if a different inmate could be housed in the same cell with Hayes at the time of the incident at issue in this lawsuit. [40-1, p. 36.] Woods allegedly cursed at Hayes and told Hayes to return to his cell. (*Id.*) Hayes admits he had stepped out of his cell at this time. [40-1, p. 37.] Woods allegedly continued to swear at Hayes, and told him to pack his belongings, that Hayes was moving to BD. (*Id.*) Hayes testified that "BD" signifies the place to house inmates for disciplinary problems. (*Id.*) Hayes stated that he understood that an inmate could be sent to BD for failing to follow a verbal command. [40-1, p. 38.]

Hayes stated that he began walking down the stairs heading for BD. [40-1, p. 39.] Woods was accompanied by McCabe and Garriga. [40-1, p. 40.] Hayes indicated that when he reached the sally-port, he stopped to ask Woods whether he could bring Lieutenant Johnson to hear the

situation before they proceeded to BD. [40-1, p. 41; 40-2, p. 1.] Hayes had just told Woods he

would not go to the "hole" because he believed he had not done anything to warrant being

moved to BD. [40-2, p. 2.] Hayes contends that he was placed in handcuffs and pushed against

the wall, with someone's hands around his neck. (*Id.*) Hayes stated that as he was trying to pull

away from the neck hold, his head hit the wall twice. [40-2, p. 3.] Then other officers arrived in

the area, and one of those officers escorted Hayes to BD. [40-2, pp. 3-6.] Hayes was examined

by medical personnel when he arrived in BD. [40-2, p. 14.]

Hayes stated he named Garriga in the lawsuit because he touched Hayes during the

incident in which he was being handcuffed. [40-2, p. 33.] Hayes testified that his face was

against the wall so he did not know if Garriga actually touched him or caused him any injury.

[40-2, pp. 34, 36.] According to the Defendants, Garriga had minimal involvement in the

incident. [41, p. 8.] Garriga stated he told Hayes to pack his belongings to move to BD, and

assisted after Hayes became aggressive in the sally-port by placing the handcuffs on Hayes. [40-

3, p. 2; 40-4, p. 2; 40-5, p. 1.]

Hayes does not claim that Woods or Garriga were involved in the denial of medical

treatment.[40-2, pp. 33-6, 38-9.] He claims that Johnson did not take pictures of the incident, and

allegedly withheld evidence. [40-2, pp. 36-8.] Hayes claims she did not perform the duties of her

position as a Lieutenant. [40-2, p. 39.] Hayes contends that Johnson left him in his room for 2-3

days without medical attention. [1, p. 5.] He claims that no pictures were taken and that he was

"heald" "from my head slapping the wall" by the time he received medical attention. [1, p. 5.]

Hayes testified that he was seen by the nurse immediately after the incident at issue in this

lawsuit. [40-2, p. 55.]

Hayes' medical records indicate he was seen on May 4, 2012, regarding a "s/p

altercation" and on May 12, 2012, for "headache." [40-8, p. 1.] The "s/p altercation" record provides that Hayes reported his head was slammed against the wall, although no marks were observed on his face, with no redness or swelling. [40-8, p. 25.] His gums were red but were not bleeding. (*Id*.) The treatment plan noted that Hayes would be monitored on the cell block. (*Id*.)

Hayes was prescribed medication for headache on May 9, 2012. [40-8, p. 6.] Hayes complained that he passed out on May 9, 2012, after hitting his head on the wall on May 3, 2012, was placed in the medical unit to be monitored for 72 hours and was examined by a medical provider, pp. 8, 21.] An acute medical emergency inmate transfer form was prepared on May 9, 2012, when an officer reported that Hayes fell on the floor and was non-responsive for thirty (30) seconds. [40-8, p. 22.]  A Neuro Check Flow Sheet was prepared on Hayes beginning on May 9, 2012, and ending May 11, 2012. [40-8, pp. 14-15.]

He received a prescription for Tylenol for treatment of a headache on May 10, 2012. [40-8, p. 4.] He was also prescribed other medication on May 25, 2012, and June 26, 2012, but there was no indication that the medication was prescribed for headaches. [40-8, pp. 2-3.] Hayes complained of head pain on May 25, 2012. [40-8, p. 5.]

A release of responsibility form indicates that Hayes refused treatment on May 14, 2012, for a skin tear on right elbow and he refused a "use of force" evaluation. [40-8, p. 16.] This form was signed by Hayes and two witnesses. (*Id*.) On May 12, 2012, Hayes reported that his head was "killing him" and requested a specific medication. [40-8, p. 17.] He refused a Tylenol and the requested medication was withheld until the provider could send an LPN to take the medication of Hayes on the cell block. (*Id*.)

On May 10, 2012, Hayes reported that he fell on the toilet and upon examination two raised areas were found on his forehead. [40-8, p. 18.] Dr. Colter ordered Hayes to remain on BD

Neuro unit and that Hayes be monitored. (*Id*.) Two other medical encounter reports were prepared on May 10, 2012, in which Hayes reported that he had a headache. [40-8, pp. 19-20.]

Hayes was examined by a psychologist after Hayes complained of being unable to sleep. [40-8, pp. 27-30.] Hayes reported swollen gums since May 3, 2012, and was referred to the dental unit, with an appointment on May 9, 2012. [40-8, p. 23.] A health services request form prepared by Hayes on May 16, 2012, provides that Hayes' gums ache as a result of being "slapped against the wall" and that he has had the problem since May 3, 2012, "since I was asselted [sic] by depts [sic] of Harrison County." [40-8, p. 35.] Hayes reported that he was taken off the list to see a doctor twice. [40-8, pp. 35-6.] The Dental Services rendered record shows Hayes as a no show on May 15, 2012, and on May 22, 2012, with the notation that he was "@ court." [40-8, p. 37.] On June 11, 2012, Hayes refused dental treatment. [40-8, p. 38.] Hayes testified that at the time he saw the dentist, he had healed and the dentist said everything was "all right.' [40-2, pp. 19-20.]

The defendants file a motion to Dismiss for Lack of Prosecution [43], or in the alternative, to show cause on June 28, 2013, when Hayes failed to answer discovery propounded to him. On July 22, 2013, the defendants filed a motion for Extension of Time to Complete Discovery [44] and Supplement Summary Judgment motion, if necessary, in case the discovery responses warranted addition action on the part of the defendants. Hayes filed a Motion for Subpoenas [45] in which he seeks to call as witnesses certain individuals he states were present when pictures of his alleged injuries were taken at the HCADC.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-7 (5th Cir. 1987). "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, it is well settled in this circuit that bare allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes. *Stafford v. True Temper Sports*, 123 F.3d 291, 295-6 (5th Cir. 1997).

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the party resisting the motion. *Prison Legal News v. Livingston*, 683 F.3d 201, 211 (5th Cir. 2012). To survive summary judgment, the party opposing summary judgment must "go beyond the pleadings" and bring forth evidence demonstrating the existence of a triable issue of fact. *See Anderson*, 477 U.S. at 247-8; *Whitt v. Stephens County*, 529 F.3d 278, 283 n.8 (5th Cir. 2008).

## <u>ANALYSIS</u>

At the time of the incident relevant to this lawsuit, Hayes was a pretrial detainee at the HCADC with constitutional rights to medical care and safety guaranteed under the procedural and substantive due process guarantees of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520 (1979). The protections of the Eighth Amendment against cruel and unusual punishment are, however, limited in scope to convicted prisoners and do not apply to pretrial

detainees such as Hayes. *See Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977). Accordingly, the Court finds that the plaintiff's claims advanced under the Eighth Amendment against these defendants should be dismissed.

I.      Claims of Excessive Force

Whenever prison officials stand accused of using excessive physical force for the purpose of institutional security by a pretrial detainee, the appropriate analysis is as follows:  whether the measure taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993).

Hayes claims that the officers used excessive force against him which is properly considered as a claim of a violation of his substantive due process rights under the Fourteenth Amendment. *Petta v. Rivera,* 143 F.3d 895, 911 (5th Cir. 1998). Under the Fourteenth Amendment standard, the court must consider whether the defendants' "actions caused [plaintiff] any injury, were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess of zeal so that [they] amounted to an abuse of official power that shocks the conscience." *Petta,* 143 F.3d at 902; *see Valencia*, 981 F.2d at 1446. Hayes is required to show that he suffered at least some form of injury, which he claims were the migraine headaches which ensued after his head was allegedly banged against the wall. *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir. 2001). The core inquiry when a prisoner alleges excessive force is not whether a certain amount of injury resulted, but whether the force was applied in a good-faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm. *Wilkins v. Gaddy,*___ U.S.___, 130 S.Ct. 1175, 1178 (2010).

The defendants claim that their actions were necessary to restore order, because of Hayes' disruptive activity. [40-3, p. 3; 40-4, p. 3.] Hayes refused to obey the orders of officer to get back into his cell. [40-11, p. 22.] Hayes refused to walk to section BD, so he was handcuffed and escorted to the area. [40-11, pp. 28-30.] Hayes was unable to specify what Garriga did during the incident, but Hayes listed Garriga as a defendant because he was "part of what happened" although Hayes could not state what injuries Garriga allegedly inflicted on Hayes. [40-2, pp. 35-6.] The Court finds that Plaintiff's claim does not show the magnitude or aberrant nature of excessive force necessary to meet the constitutional standard, and further concludes that these claims should be dismissed on summary judgment. *See Siglar v. Hightower,* 112 F.3d 191, 194 (5th Cir. 1997).

II.    Deliberate Indifference to Serious Medical Need

"[P]retrial detainees have a constitutional right under the Due Process Clause of the Fourteenth Amendment not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001), *citing Estelle v. Gamble,* 429 U.S. 97 (1976); *see also Reeves v. Collins,* 27 F.3d 174, 176-7 (5th Cir. 1994). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006). Unsuccessful or negligent medical treatment and medical malpractice, if any, do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006). "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." *Mace v. City of Palestine,* 333 F.3d 621, 626 (5th Cir. 2003).

Hayes contends that he was not treated for two or three days following his injury allegedly caused by hitting his head on the wall. [1, p. 5.] It is assumed for the purposes of this motion that plaintiff's injuries were a serious medical need. Plaintiff's § 1983 claim for deliberate indifference to a serious medical need fails, however, because he cannot establish that defendants were, in fact, deliberately indifferent to that need. The record does not establish that plaintiff's medical care was inadequate. Hayes was seen on a number of occasions following the incident with hitting his head, was evaluated by the doctor and was placed in the medical unit for observation. [40-8; 40-9, p. 8.] Plaintiff also cannot establish that there was an actionable delay in obtaining treatment. An inmate who had been examined by medical personnel on numerous occasions fails to set forth a valid showing of deliberate indifference to serious medical needs. *Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995).

The named defendants were not responsible for decisions regarding his medical care. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009). Hayes does not show that the officers were aware, or should have been aware, of any substantial risk to his health. *See Gibbs v. Grimmette,* 254 F.3d 545, 550 (5th Cir. 2001), *cert. denied* 534 U.S. 1136 (2002). Their actions do not rise to the level of "wanton disregard for [Hayes'] serious medical needs." *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, a prison inmate can demonstrate an Eighth Amendment violation by showing that "prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Sama v. Hannigan,*

669 F.3d 585, 590 (5th Cir. 2012). None of this behavior was present in the circumstances surrounding Hayes claims and the Court finds that his claim of deliberate indifference to serious medical needs should be dismissed.

III.    Qualified Immunity

Hayes seeks to impose liability against the Defendants in their individual capacities for the allegedly unconstitutional conditions at the HCADC. Because these Defendants are law enforcement officials, they may raise the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986), *cert. denied* 483 U.S. 1021 (1987). The Court must first determine whether the plaintiff has established a violation of a clearly established constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). The burden of rebutting the defense of qualified immunity lies with the plaintiff. *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005). "The qualified immunity inquiry consists of two prongs:  (1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct." *Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir. 2009). As discussed above, Hayes has failed to establish a violation of his constitutional rights in the allegations of his complaint. The Court finds that the Defendants should be granted qualified immunity for claims advanced against them in their individual capacities.

IV.    Official Capacity Claims

"For purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti,* 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy,

11

custom, or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978). Plaintiff has failed to establish that the HCADC had a policy, custom or practice that was the "moving force" behind the alleged constitutional violations. *See Monell,* 436 U.S. at 694. Based on these principals, the Court finds that Plaintiff's claims against the defendants in both their individual and official capacities should be dismissed with prejudice.

V.      State Law Claims

        Although it is not clear that Hayes has pleaded any claims against these Defendants under state law, the Court will address such claims out of an abundance of caution. Any such state law claims are barred by Hayes' failure to follow the requirements of the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq*. In addition, the claims are barred by the "inmate exception" portion of the statute, MISS. CODE ANN. § 11-46-9(1)(m) (providing that governmental entity and employees in course and scope of employment not liable for any claim "[o]f any claimant who at the time the claim arises is an inmate of any detention center . . . regardless of whether such claimant is or is not an inmate of any detention center . . ..") The Court finds that the defendants' Motion for Summary Judgment on any state law claims should be granted.

        The Court further finds that the motions to Dismiss for Lack of Prosecution [43], or in the alternative, to show cause and for Extension of Time to Complete Discovery [44] and Motion for Subpoenas [45] should be denied as moot.

## CONCLUSION

        For the reasons set forth above, this Court finds that the Defendants' motion for summary judgment [40] on the claims advanced by Hayes against these Defendants should be granted. The

Court further finds that the motion for qualified immunity by the Defendants for any claims brought against them in his individual capacity should be granted. In addition, the Court finds that the motions to Dismiss for Lack of Prosecution [43], or in the alternative, to show cause and for Extension of Time to Complete Discovery [44] and Motion for Subpoenas [45] should be denied as moot. A separate judgment in conformity with and incorporating by reference the above Memorandum Opinion shall issue this date. A copy of this Memorandum Opinion and the judgment shall be mailed by certified mail, return receipt requested to Hayes at his last known address of record. Each party shall bear their respective costs associated with this motion.

DATED, this the 1st day of November, 2013.


s/ John M. Roper, Sr.
CHIEF UNITED STATES MAGISTRATE JUDGE